IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAMES L. BARKER, JEANNE A. BARKER,<br><br>                Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A., CIT BANK, N.A., ONEWEST BANK, FIRST AMERICAN TITLE COMPANY OF MONTANA, INC., Trustee, and CHARLES PETERSON, Trustee,<br><br>                Defendants. | CV 17-21-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATION REGARDING DEFENDANT CIT BANK N.A.'S MOTION TO DISMISS AND MOTION TO DISSOLVE INJUNCTION** |

Plaintiffs James L. Barker and Jeanne A. Barker ("Plaintiffs") originally filed this action in Montana's Sixth Judicial District Court on December 7, 2016. Defendant CIT Bank, N.A. removed this case to federal court on February 16, 2017.  (Doc. 1.)  On February 24, 2017, Plaintiffs filed an amended complaint. Thereafter, on May 1, 2017, CIT filed a motion to dismiss for failure to state a claim.  (Doc. 11.)  This Court recommended that the motion be granted without prejudice and with leave to amend.  (Doc. 24.)  The Honorable Susan P. Watters ordered CIT's motion be granted, but ordered that Plaintiffs' Counts I and IV be dismissed with prejudice, and Plaintiffs' Counts II, III, V-X be dismissed without prejudice.  (Doc. 30.)

1

Plaintiffs have now filed their Second Amended Complaint against Bank of America,[1] OneWest Bank and CIT Bank, N.A., (collectively "CIT"[2]), First American Title Company of Montana, Inc., Trustee, and Charles Peterson, Trustee,[3] arising from an attempted foreclosure and loan modification.  Plaintiffs allege claims of fraud (Count II), violation of the Fair Debt Collection Practices Act (Count III), negligence (Count V), violation of the Montana Unfair Trade Practices and Consumer Protection Act (Count VI), constructive fraud (Count VII), negligent misrepresentation (Count VIII), and deceit (Count IX).  Plaintiffs also request injunctive relief (Count XI).  (Doc. 36.)

Presently before the Court are CIT's Motion to Dissolve Injunction (Doc. 43) and Motion to Dismiss (Doc. 46), which have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B).  The motions are fully briefed and ripe for the Court's review.  (Docs. 44, 51, 57, 47, 56, 58.)

---

[1] On March 23, 2017, Bank of America, N.A., was dismissed with prejudice upon the parties' joint stipulation.  (Doc. 10.)

[2] The Second Amended Complaint names OneWest Bank and CIT Bank, N.A. as a separate defendants.  However, they are not separate entities.  In August 2015, CIT Bank merged with One West Bank, N.A., and was renamed CIT Bank, N.A.  (Doc. 15; Doc. 19 at 2, n.1.)  To avoid confusion, CIT Bank, N.A. and OneWest Bank will be collectively referred to as "CIT."

[3] On December 5, 2017, Charles Peterson was dismissed with prejudice upon the parties' joint stipulation.  (Doc. 23.)

2

Having considered the parties' submissions, the Court **RECOMMENDS** CIT's Motion to Dismiss and Motion to Dissolve Injunction be **GRANTED**.

## I.    BACKGROUND

Plaintiffs are the owners of real property located in Park County, Montana. (Doc. 36 at ¶ 1.)  On October 11, 2000, Plaintiffs executed a Trust Indenture, securing a $360,000 loan, in which they named First American Title Insurance Company of Montana as Trustee for the benefit of Bank of America, N.A.  *Id.* at ¶ 2.

On May 28, 2010, the Federal Deposit Insurance Company ("FDIC") executed an Affidavit of Lost Assignment ("ALA"), stating that FDIC was the owner and holder of Plaintiffs' mortgage, as receiver for IndyMac Federal Bank, FSB.  *Id.* at ¶¶ 19- 20.  The ALA stated that IndyMac Bank was the owner and holder of the mortgage as a result of the sale and assignment of the mortgage from Bank of America, but the assignment had been lost or destroyed before it could be placed of record.  *Id.* at ¶ 21.  The ALA was recorded with the Park County Clerk and Recorder on June 21, 2010.  *Id.* at ¶ 19.

Plaintiffs allege the ALA is fraudulent because Bank of America could not have assigned its interest in the Trust Indenture to IndyMac Bank, FSB.  *Id.* at ¶ 24.  Plaintiffs allege they were in bankruptcy at the time of the alleged assignment, and their mortgage was subject to an automatic stay.  *Id.* at ¶ 24.  Thus, Plaintiffs

allege, Bank of America would have been prevented from assigning their mortgage. *Id.*

Plaintiffs allege the ALA was executed to enable the owner of the mortgage to benefit from a shared loss agreement with the FDIC. *Id.* at ¶ 25. If covered by the shared loss agreement, Plaintiffs allege the owner of the mortgage stood to benefit in excess of their initial investment in the property by foreclosing on the home subject to the agreement. *Id.* at ¶ 14.

On October 12, 2010, IndyMac Bank, FSB appointed Defendant Charles Peterson ("Peterson") as Successor Trustee. *Id.* at ¶ 27. Again, however, Plaintiffs allege there is no record IndyMac Bank, FSB held a beneficial interest in the Trust Indenture, and therefore it did not have authority to appoint a successor trustee. *Id.* at ¶ 27.

In 2009, Plaintiffs fell behind on their loan payments. (Doc. 36 at ¶ 16.) On October 12, 2010 and November 10, 2010, Peterson filed two independent Notices of Trustee's Sales. *Id.* at ¶ 28, 31. Both sales were later cancelled. *Id.*

On October 18, 2012, First American Title Company of Montana ("First American") was appointed as Successor Trustee. *Id.* at ¶ 32. On October 22, 2012, January 3, 2013, and July 20, 2016, First American filed three independent Notices of Trustee's Sales. *Id.* The first two foreclosure sales were later

cancelled; the Park County District Court enjoined the third foreclosure on April 4, 2017.[4]  *Id.*

Plaintiffs allege that beginning in 2009, they initiated communications with Bank of America concerning a possible loan modification.  (Doc. 36 at ¶ 37.)  Plaintiffs allege they were frustrated with the process and with their communications with Bank of America.  *Id.* at ¶¶ 38-43.  They allege that multiple loan modification applications were denied.  Plaintiffs allege that one denial letter, dated August 31, 2013, identified "IndyMac" as the "investor" who had not approved the modification.  *Id.* at ¶ 26.

Nevertheless, after the beneficiary interest was transferred to One West, One West granted Plaintiffs a loan modification.  The signed loan modification agreement was recorded on October 22, 2015 with the Park County Clerk and Recorder.[5]  (Doc. 44-1.)

---

[4] The Court takes judicial notice of the Park County District Court's order enjoining the foreclosure sale.  *Duckett v. Godinez,* 67 F.3d 734, 741 (9th Cir. 1995) (stating the Court "may take judicial notice of proceedings in other courts, whether in the federal or state systems").

[5] As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, the Court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions.  *Branch v. Tunnell*, 14 F.3d 449, 453-454 (9th Cir. 1994).  Here, Plaintiffs refer to their loan modification applications throughout the Second Amended Complaint and rely on them for their various causes of action.

## II.    ANALYSIS

The Court will initially address CIT's motion to dismiss, followed by CIT's motion to dissolve the state court issued stay of foreclosure.

### A.    Motion to Dismiss – Failure to State a Claim

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

In addition, there is no serious question as to the authenticity of the loan modification agreement as it was signed, notarized and recorded.

A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

CIT argues Plaintiffs have failed to allege sufficient facts to support any of their claims. Additionally, CIT contends Plaintiffs' claims are all barred by the statutes of limitations. Therefore, CIT maintains all claims against it should be dismissed with prejudice.

Plaintiffs maintain that the allegations of their Second Amended Complaint are sufficient to state a claim for each cause of action set forth in the complaint. Plaintiffs also argue that their claims are not time-barred, and therefore contend that CIT's motion to dismiss should be denied.

### 1. Counts II and VII – Fraud and Constructive Fraud

Plaintiffs assert claims for fraud and constructive fraud in Counts II and VII of their complaint. CIT contends Plaintiffs fail to meet the heightened pleading standard of particularity required for alleging fraud-based claims.

Fraud must be pled with particularity. Federal Rule of Civil Procedure 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[T]he circumstances constituting the alleged fraud must 'be specific enough to

give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  To satisfy the requirements of Rule 9(b), a plaintiff who claims fraud must state the "who, what, when, where, and how" of the fraud.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *See also, Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)) (emphasis in original).

Federal courts look to state law to see whether the elements of fraud have been pled sufficiently.  *Kearns*, 567 F.3d at 1126.  A party must plead the following nine elements with particularity in order to properly state a fraud claim in Montana:

> (1) a representation; (2) falsity of representation; (3) materiality of that representation; (4) speaker's knowledge of falsity of representation or ignorance of its truth; (5) the speaker's intent that it should be relied on; (6) the hearer is ignorant of the falsity of the representation; (7) the hearer relies on the representation; (8) the hearer has a right to rely on the representation; and, (9) consequent and proximate injury was caused by reliance on the representation.

*First Nat'l Bank in Havre v. Nelson*, 741 P.2d 420, 421 (Mont. 1987).

8

Here, Plaintiffs have not alleged fraud with sufficient particularity because they have not pled facts tending to show their detrimental reliance on CIT's alleged misrepresentation.  Plaintiffs state the alleged misrepresentation was CIT's claim that Bank of America assigned Plaintiffs' mortgage to IndyMac Bank prior to FDIC being appointed receiver of IndyMac.  Plaintiffs allege this representation is false because IndyMac could not have been assigned their mortgage to FDIC because an automatic stay was placed on their mortgage during that time. Plaintiffs contend that because of CIT's actions, they were threatened by notices of trustee sales, endured emotional distress from believing their home would be foreclosed, and spent significant time filing for home loan modifications.

Plaintiffs fail to allege, however, that their claimed injuries are a result of their reliance on the alleged misrepresentation.  They fail to assert that, "but for their reliance on the alleged [misrepresentation], they would have timely cured their default and avoided foreclosure." *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 699 (Mont. 2017).  In fact, Plaintiffs have represented that they were not even aware of the ALA and the alleged misrepresentation until the fall of 2016, when reviewing records at the Clerk and Recorders office.  (Doc. 56 at 21.) Obviously, Plaintiffs could not have previously relied upon an unknown representation.  Without facts supporting the inference that the alleged misrepresentation caused detrimental reliance, the allegations in the Second

9

Amended Complaint fall short, even without consideration of the particularity required by Rule 9(b).  The Court therefore recommends Count II be dismissed.

To establish constructive fraud, a plaintiff must prove all elements of actual fraud except for the speaker's intent that it should be relied upon.  *Hartfield v. Billings*, 805 P.3d 1293, 1296 (Mont. 1990).  For the same reasons discussed above, the Court also finds that Plaintiffs' allegations are not sufficient to state a claim of constructive fraud.

There are conflicting statements in cases in this circuit as to whether 9(b)'s heightened pleading standard applies to claims of constructive fraud.  *Compare Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F.Supp.2d 1009, 1021(N.D. Cal. 2007) ("facts supporting a claim for constructive fraud must be alleged with particularity under Rule 9(b)"), with *1849 Condominiums Assoc., Inc. v. Bruner*, 2010 WL 2557711. *3 (E.D. Cal. June 21, 2010) ("courts do not apply [the] heightened pleading standard to constructive fraud claims").  Regardless, the factual allegations of Plaintiffs' complaint are not sufficient to state a plausible claim for relief even without application of 9(b)'s heightened pleading standard.

In Count VII, Plaintiffs again allege CIT's actions constitute constructive fraud because it represented to the Plaintiffs that their mortgage was assigned to and held by IndyMac prior to FDIC being appointed its receiver.  (Doc. 36 at ¶¶ 71-81.)  Again, however, Plaintiffs fail to allege any facts to infer they relied on

the alleged misrepresentation to their detriment.  Although they allege they

suffered injuries, Plaintiffs have not set forth any facts to plausibly show those

injuries resulted from their reliance on the misrepresentation.  As such, the Court

recommends Count VII be dismissed.

### 2.      Count III—Violation of the FDCPA

Plaintiffs assert a claim in Count III of their complaint under the Fair Debt

Collection Practices Act ("FDCPA").  CIT argues Plaintiffs' FDCPA claim must

be dismissed because it is not a "debt collector" under the statute.  CIT further

argues that even if the FDCPA applies, Plaintiffs failed to identify any provision of

the Act they claim CIT violated.

To bring a claim under the FDCPA, a plaintiff must establish that "(1) the

plaintiff constitutes a consumer; (2) who was the object of a collection activity

arising from a debt; (3) the defendant constitutes a debt collector; and (4) the

defendant violated a provision of the FDCPA."  *Wittman v. CB1, Inc.*, 2016 WL

3093427, *2 (D. Mont. June 1, 2016).  Because the FDCPA applies only to "debt

collectors," Plaintiffs must allege factual content that allow the reasonable

inference that CIT is a debt collector under the act.  *Schlegel v. Wells Fargo Bank,

N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013)

The FDCPA defines a debt collector as "any person who uses any

instrumentality of interstate commerce or the mails in any business the principal

11

purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Thus, by the statutory terms, the FDCPA's application is limited to those whose principle purpose is debt collection, or who regularly collects the debts "due another," and does not include activities of creditors seeking to collect their own debts. *Id.* at 1209; *see also Maguire v. Citicorp Retail Services, Inc.* 147 F.3d 232, 235 (2d Cir. 1998); *Harrison v. NBD Inc.*, 968 F.Supp. 837, 841 (E.D.N.Y. 1997).

Here, Plaintiffs allege that they are consumers subject to mortgage servicing, CIT is a debt collector, and CIT violated the FDCPA. Plaintiffs alleges OneWest Bank Mortgage Servicing is a division of CIT, and therefore CIT is a debt collector. (Doc. 36 at ¶ 56.) But Plaintiffs' allegations fall short of providing sufficient factual support allowing the Court to infer CIT's principal purpose is debt collection, or that it regularly collects debt owed or due another, as required by the FDCPA. The most the Court can infer under the facts pled is that a division of CIT engages in unspecified mortgage servicing of obligations owed to CIT. This allegation is insufficient to allow the Court to draw the inference that CIT is a debt collector under the FDCPA. *See, e.g. Schlegel*, 720 F.3d at 1209 (complaint failed to state a claim where it could only be inferred that debt collection was some part of defendant's business, and that defendant collected debt owed to itself).

12

Additionally, Plaintiffs argue that CIT should be liable for the actions of

Charles Peterson, who they argue attempted to collect a debt on CIT's behalf.

(Doc. 56 at 23.)  The Ninth Circuit has held, however, that a trustee in a non-

judicial foreclosure is not a "debt collector" within the meaning of the FDCPA,

because the trustee is not collecting money but is "retak[ing] and resell[ing] the

security."  *Vien-Phuong Thi Ho v. ReconTrust Company, N.A.*, 858 F.3d 568, 571

(9th Cir. 2017).  Under Montana law, a nonjudicial foreclosure cannot result in the

debtor's obligation to pay any deficiency.  *See*, Mont. Code Ann. § 71-1-317.

Therefore, Peterson's "actions taken to facilitate a non-judicial foreclosure, such as

sending the notice of default and notice of sale, are not attempts to collect "debt"

as that term is defined by the FDCPA."  *Vien-Phyong Thi Ho*, 858 F.3d at 572.

Additionally, even if Peterson was somehow liable under the FDCPA,

Plaintiffs have failed to explain how CIT would be vicariously liable for his

actions.  The cases Plaintiffs cite in support of this theory involve attorneys

directly retained by creditors to represent them in their collection of unpaid

balances.  *See North Star Captial Acquisitions v. Krig*, 611 F.Supp.2d 1324 (M.D.

Fla. 2009) (recognizing that a creditor could be vicariously liable for the actions of

an attorney representing it in its collection efforts); *Shutz v. Arrow Financial*

*Services, LLC*, 465 F.Supp.2d 872 (N.D. Ill. 2006) (collecting cases); *See also, Fox*

*v. Citicorp Credit Services Inc.*, 15 F.3d 1507 (9th Cir. 1994) (creditor could be

vicariously liable for actions of attorney retained for debt collection services).

Here, Peterson is a Successor Trustee who also happens to be an attorney.

Plaintiffs have not alleged facts that Peterson was an attorney retained by CIT, was

engaged in CIT's debt collection efforts, or had a principal-agent relationship with

CIT.  Accordingly, Plaintiffs' FDCPA claim under its vicarious liability theory

also fails.  The Court recommends that Count III be dismissed.

### 3.   Count V – Negligence

CIT also argues Plaintiffs negligence claim must be dismissed, because

Plaintiffs fail to allege sufficient facts to establish it owed them a special duty of

care with respect to the foreclosure sale or the loan modification.

To plead negligence in Montana, a plaintiff must show "(1) the defendant

owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach

was the actual and proximate cause of an injury to the plaintiff, and (4) damages

resulted." *Peterson v. Eichhorn*, 189 P.3d 615, 621 (Mont. 2008)).  The question

of duty is a question of law.  If a duty does not exist, a plaintiff cannot maintain a

negligence action. *Sikorski v. Johnson*, 143 P.3d 161, 164 (Mont. 2006).

The Second Amended Complaint states that CIT owed Plaintiffs a legal duty

with respect to their loan modification requests.  Plaintiffs argue their relationship

with CIT went beyond that of a creditor and debtor, and CIT had a duty to "use

reasonable best efforts to have themselves or third party servicers undertake reasonable and customary loss mitigation efforts."  (Doc. 36 at ¶ 62.)

Generally, the ordinary lending relationship between a bank and its customer is that of a debtor and creditor and "does not give rise to fiduciary responsibilities." *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1177 (Mont. 2014).  Further, "a bank has no duty to modify or renegotiate a defaulted loan."  *Id.*  If the bank goes beyond the role of lender, however, and "actively advises customers in the conduct of their affairs, the bank may owe a fiduciary duty."  *Id.*

Here, Plaintiffs allege CIT's servicing agencies "engaged" with them regarding their loan modification requests by advising them "on how to proceed with their requests, what documentation was needed and the status of reviews of their submittals."  (Doc. 36 at ¶ 62.)  These statements do not allege any specific advice or representations CIT made to Plaintiffs as to the conduct of their affairs. Plaintiffs have not alleged CIT provided them with advice beyond basic information regarding loan modification steps, nor have they alleged CIT "advised or otherwise induced them to default on their mortgage."  *Anderson*, 407 P.3d at 699.  Further, the Second Amended Complaint is "devoid of any assertion that, but for their reliance on the alleged [negligence] they would have timely cured their default and avoided foreclosure."  *Id.*  As a result, Plaintiffs have failed to state a claim for negligence.  Therefore, the Court recommends Count V be dismissed.

15

### 4.    Count VI – Violation of the Unfair Trade Practices Act

CIT argues Plaintiffs fail to allege sufficient facts to support their claim under the Montana Unfair Trade Practices and Consumer Protection Act.

The MUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mont. Code Ann. § 30-14-103.  The MUTPA applies to lenders.  *Morrow*, 324 P.3d at 1184. An act or practice is "unfair if it 'offends established public policy and . . . is either immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'"  *Id.*  "A consumer may sue under the act if he or she has suffered 'any ascertainable loss of money or property' as the result of an unfair practice."  *Id.*

Here, the Court cannot reasonably infer from the facts alleged that Plaintiffs suffered an "ascertainable loss of money or property."  *Morrow*, 324 P.3d at 1184. *See also*, Mont. Code Ann. § 30-14-133(1).  Plaintiffs contend they "suffered losses and endured excessive distress . . . by completing multiple home loan modification packets, corresponding with [CIT's] servicing agents and living under the threat of foreclosure."  (Doc. 36 at ¶ 70.)  These allegations do not identify lost money or property as a result of CIT's conduct.  Again, the Second Amended

Complaint does not allege that, in the absence of the alleged misrepresentation, Plaintiffs would have timely cured their default and avoided foreclosure.

In their response brief, Plaintiffs assert they suffered an ascertainable loss by renting a storage unit to keep their belongings during the pending foreclosure sales. (Doc. 51 at 28-29.)  But Plaintiffs cannot cure the defects in their complaint by asserting additional facts in their opposition to the motion to dismiss.  *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197, n.1 (9th Cir. 1998).  Therefore, Plaintiffs fail to allege facts to plausibly support the inference that they suffered an ascertainable loss of money or property.  Accordingly, the Court recommends Count VI be dismissed.

### 5.   Negligent Misrepresentation and Deceit (Count VIII and IX)

Counts VIII and IX of the Second Amended Complaint assert claims for negligent misrepresentation and deceit.  For negligent misrepresentation, a plaintiff must establish:

> (a)  the defendant made a representation as to a past or existing material fact;
> (b)  the representation must have been untrue;
> (c)  regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing it to be true;
> (d)  the representation must have been made with the intent to induce the plaintiff to rely on it;

17

(e) the plaintiff must have been unaware of the falsity of the
representation; it must have acted in reliance upon the truth of the
representation and it must have been justified in relying upon the
representation;

(f) the plaintiff, as a result of its reliance, must sustain damage.

*Kitchen Krafters, Inc. v. Eastside Bank of Montana*, 789 P.2d 567, 573 (Mont.

1990) (overruled on other grounds).  Negligent misrepresentation has a lesser

standard of proof than fraud.  *Barrett v. Holland & Hart*, 845 P.2d 714, 717 (Mont.

1992).  It requires a showing of a failure to use reasonable care or competence in

communicating or obtaining information, rather than requiring an intent to

misrepresent.  *Id.*

As for deceit, Plaintiffs must show CIT "willfully deceive[d] another with

intent to induce that person to alter the person's position to the person's injury or

risk."  Mont. Code Ann. § 27-1-712(1).  Under Montana law deceit is defined as:

(a) the suggestion as a fact of that which is not true by one who
does not believe it to be true;
(b) the assertion as a fact of that which is not true by one who
has no reasonable ground for believing it to be true;
(c) the suppression of a fact by one who is bound to disclose it
or who gives information of other facts that are likely to
mislead for want of communication of that fact; or
(d) a promise made without any intention of performing it.

Mont. Code Ann. § 27-1-712(2).

The heightened pleading standard under Rule 9(b) applies to both negligent

misrepresentation and deceit claims because they are essentially grounded in fraud.

18

*Pfau v. Mortenson*, 858 F.Supp.2d 1150, 1158 (D. Mont. 2012); *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Rustad v. Bank of Am. Corp.*, 2017 WL 1424433, *5 (D. Mont. April 20, 2017).

In this case, Plaintiffs' claims of negligent misrepresentation and deceit are not sufficiently pled with particularity.  Plaintiffs include factual allegations for most of the negligent misrepresentation elements.  But again, they do not plead specific facts regarding how they relied on CIT's alleged misleading representations, or how they could have relied upon the representation when they were unaware it had been made.

Additionally, Plaintiffs do not allege facts to support a claim for deceit. They do not allege facts tending to establish how CIT intended to induce them to alter their position to their injury or risk.  Plaintiffs claim CIT's misrepresentation would allow CIT to receive the maximum financial gain from the foreclosure of their home, but Plaintiffs do not explain how the misrepresentation was intended to prompt Plaintiffs to act any differently.

In response to the motion to dismiss, Plaintiffs state CIT withheld the alleged misrepresentation which prevented them from pursuing other remedies to save their home.  (Doc. 56 at 17.)  First, the Court does not consider new facts alleged in a plaintiff's response to a motion to dismiss. *Schneider*, 151 F.3d at 1197, n.1.  Moreover, Plaintiffs still fail to specify how the alleged

19

misrepresentation caused them to not pursue other remedies, especially when they were unaware the representation had been made.  Therefore, the Court recommends that Counts VIII and IX be dismissed.

### 6.    Count XI—Injunction

CIT argues Plaintiffs have failed to state any claim that would entitle them to injunctive relief, and that Plaintiffs' request for injunction is moot because the sale has already been enjoined.  In their response, Plaintiffs argue they have alleged facts supporting their claims which are likely to succeed, and they will suffer irreparable harm without an injunction preventing CIT from pursuing additional foreclosure actions.

To obtain an injunction under Montana law, Plaintiffs must demonstrate the existence of a legitimate cause of action and a likelihood of success on the merits.  *Mack v. Anderson*, 380 P.3d 730, 740 (Mont. 2016); Mont. Code Ann. § 27-19-201.  Because the Court finds that all counts of the Second Amended Complaint should be dismissed, there is no claim upon which injunctive relief can be granted.

The Court therefore recommends that Plaintiffs' claim for injunctive relief in Count XI be dismissed.

/ / /

/ / /

20

## B.  Motion to Dismiss - Statutes of Limitations

In addition to its Rule 12(b)(6) motion to dismiss for failure to state a claim, CIT also moves to dismiss based on the statute of limitations.  "A statute-of-limitations defense, if apparent from the face of the complaint, may properly be raised in a motion to dismiss."  *Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013).

CIT asserts that the statutes of limitations have run on Plaintiffs' claims. CIT argues that Plaintiffs' claims are grounded on actions that took place between 2009 and 2011, and therefore the applicable limitations periods had run by the time Plaintiffs filed their complaint on December 7, 2016.  (Docs. 47, 58 at 5.)  In response, Plaintiffs do not dispute that the statutes of limitations have run on their claims.  Rather, they argue the limitations period for each claim was tolled until Plaintiffs discovered the allegedly fraudulent ALA in the fall of 2016.  (Doc. 56 at 21.)

A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations.  *Albano v. Shea Homes Ltd. Partnership,* 634 F.3d 524, 530 (9th Cir. 2011).  This includes application of a state's tolling rules.  *Id.*  Under Montana law, "[t]he fact that a party does not know that he or she has a claim, whether because he or she is unaware of the facts or unaware of his or her legal rights, is usually not sufficient to delay the beginning of

21

the limitations period." *Christian v. Atlantic Richfield Co.*, 358 P.3d 131, 152

(Mont. 2015). Montana law does recognize the discovery rule, however, which

provides that "if the facts constituting the claim are concealed or self-concealing in

nature, or if the defendant has acted to prevent the injured party from discovering

those facts, the period of limitations does not begin to run until the injured party

has discovered, or in the exercise of due diligence should have discovered, both the

injury and its cause." *Id.*

      The discovery rule is codified for actions involving fraud and for claims

asserting an injury to person or property. Regarding claims for fraud, deceit, and

constructive fraud, Mont. Code Ann. § 27-2-203 provides:

> The period prescribed for the commencement of an
> action for relief on the ground of fraud or mistake is
> within 2 years, the cause of action in such case not to be
> deemed to have accrued until the discovery by the
> aggrieved party of the facts constituting the fraud or
> mistake.

For injury to person or property, Mont. Code Ann. § 27-2-102(3) further provides:

> (3)    The period of limitations does not begin on any
> claim or cause of action for an injury to person or
> property until the facts constituting the claim have been
> discovered or, in the exercise of due diligence, should
> have been discovered by the injured party if:
>
> (a)    the facts constituting the claim are by their nature
> self-concealing; or
>
> (b)    before, during, or after the act causing the injury,
> the defendant has taken action which prevents the

> injured party from discovering the injury or its
> cause.

The discovery rule has been applied to each cause of action asserted by Plaintiffs.[6]

The statute of limitations for fraud, constructive fraud, and deceit is two years, and the limitations period for negligent misrepresentation is three years. *See*, Mont. Code Ann. §§ 27-2-203, 27-2-204.  Generally, "the statute of limitations for actions based on fraud begins to run when the fraud occurs, unless the facts forming the basis for the alleged fraud are, by their nature, concealed, or the defendant takes affirmative action to prevent the plaintiff from discovering the injury."  *S Bar B Ranch v. Omimex Canada, Ltd.*, 942 F.Supp.2d 1058, 1060 (D. Mont. 2013) (quoting *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441 (Mont. 2003)). "To toll the statute of limitations the fraud must be of such a character as to prevent inquiry, elude investigation, or to mislead the party who claims the cause

---

[6] The discovery rule applies to a negligence cause of action and tolls the limitations period "until the injured party has discovered the facts constituting the claim or, with due diligence, should have discovered those facts."  *Nelson v. Nelson*, 50 P.3d 139, 142 (Mont. 2002) (quoting *Gomez v. State*, 975 P.2d 1258, 1260 (Mont. 1999)); *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 305 P.3d 781, 787 (Mont. 2013) (applying the discovery rule to a MUTPA claim); *Magnum v. Action Collection Service, Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) (recognizing that the limitation period for FDCPA claims may be tolled by the discovery rule); *Gomez v. State*, 975 P.2d 1258, 1260 (Mont. 1999) (the discovery rule applies to a negligence cause of action and tolls the limitations period "until the injured party has discovered the facts constituting the claim or, with due diligence, should have discovered those facts").

of action . . . [.]  *Much v. Strum, Ruger & Co., Inc.*, 502 F.Supp. 743, 744 (D. Mont. 1980).

Plaintiffs contend that they did not discover the ALA until the fall of 2016, because CIT fraudulently concealed it by failing to send it to them.  (Doc. 56 at 21.)  They argue that CIT's inaction constitutes fraudulent concealment because a fiduciary relationship existed between themselves and CIT.  *Id.*

First, it cannot be found that CIT took affirmative action to prevent plaintiffs from discovering the ALA.  In fact, the document was filed in the public record with the Park County Clerk and Recorder on June 21, 2010.  Such an open, public disclosure is the opposite of fraudulent concealment.  Thus, it appears Plaintiffs' "inactivity, rather than any affirmative acts by [CIT], caused [them] to exceed the statutory filing period."  *Much*, 502 F.Supp. at 745.

Further, "[a] party asserting fraud is put on 'inquiry notice' when he could discover the other parties [sic] misdeed through ordinary diligence."  *S Bar B Ranch*, 942 F.Supp.2d at 1050-61.  Therefore, when a party has "notice or information of circumstances which would put him on inquiry which if followed would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have actual knowledge of the facts."  *Shupak v. New York Life Ins. Co.*, 780 F.Supp. 1328, 1333 (D. Mont. 1991).

24

Here, Plaintiffs allege CIT committed fraud by claiming their mortgage had been assigned to IndyMac Bank. They claim to have been unaware of this assignment because the ALA documenting the assignment was fraudulently concealed. But Plaintiffs also assert that a loan modification denial received in August 2013 identified "IndyMac" as the "investor" on the mortgage. (Doc. 36 at ¶ 26.) Certainly, their receipt of the denial letter stating IndyMac was the investor on their mortgage put Plaintiffs on inquiry notice that an interest in their mortgage had been assigned to IndyMac. If they would have followed up on this notice by simply looking at the public record of their property, they would have discovered the ALA and the assignment to IndyMac.

Moreover, Plaintiffs have failed to allege any facts tending to establish that CIT had a duty to disclose the ALA to Plaintiffs. In *S Bar B Ranch*, for example, the plaintiffs similarly argued that the discovery rule and the defendant's fraudulent concealment should toll the statute of limitations on their fraud claim. 942 F.Supp.2d at 1061. The court determined, however, that because the defendant had no duty to disclose the material at issue, "there could be no concealment and the statute of limitations would not be tolled by the discovery rule." *Id.*

Here, CIT similarly had no duty to disclose the ALA to Plaintiffs. As discussed above, "the relationship between a bank and its customer is generally

25

described as that of debtor and creditor, and does not give rise to fiduciary responsibilities, unless the bank takes on the role of an advisor or an agency relationship exists. *Pederson v. Rocky Mountain Bank*, 272 P.3d 663, 666 (Mont. 2012). Plaintiffs fail to plead any facts tending to establish that a fiduciary relationship existed between the parties.

Plaintiffs also fail to identify any statute or express provision in the Deed of Trust restricting assignment or requiring notice of such a transfer. *See Watts v. HSBC Bank U.S. Trustee*, 308 P.3d 57, 61 (Mont. 2013) (finding the assignment of a Deed of Trust without prior notice to the borrower to be valid when no such requirement was expressly provided in the Deed of Trust language). This is likely true because such an assignment generally does not affect the borrower's interests, or the performance of their obligations under the agreement. As recognized by the Idaho District Court "the borrower (the maker of the note) 'should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note.'" *Washburn v. Bank of Am., N.A.*, 2012 WL 139213, at *2 (D. Idaho Jan. 17, 2012), quoting *Veal v. Am. Home Mortgaging Serv., Inc.* (In re Veal), 450 B.R. 897, 912 (9th Cir.BAP2011).

The discovery rule is inapplicable to Plaintiffs' non-fraud-based claims for similar reasons. The statute of limitations is three years for negligence, two years for violation of the MUTPA, and one year for violation of the FDCPA. *See*, Mont.

26

Code Ann. § 27-2-204(1); *Johnston*, 305 P.3d at 787; 15 U.S.C. § 1692k(d).  The

parties agree these time periods have run.

At the heart of the discovery doctrine is the notion that a plaintiff should not

be barred by a limitations period unless she "has discovered the facts constituting

the claim or, with due diligence, should have discovered those facts."  *Nelson*, 50

P.3d at 142 (quoting *Gomez v. State*, 975 P.2d 1258, 1260 (Mont. 1999)).  As with

fraud-based claims, the discovery rule under Section 27-2-102(3)] "applies where

the facts constituting the injury by their nature are concealing, or the defendant has

taken some action that prevents the injured party from discovering the injury or its

causes."  *Johnston*, 305 P.3d at 788 (Mont. 2013) (internal citations omitted).  But

again, if the plaintiff "is given notice or information that would prompt a

reasonable person to conduct further inquiry . . . and yet fails to exercise

reasonable diligence, the limitations period will not be tolled.  *Christian.*, 358 P.3d

at 153 (citing *Mobley v. Hall*, 657 P.2d 604, 607 (1983)).

As previously discussed, Plaintiffs have not alleged facts supporting

application of the discovery rule.  Plaintiffs' appeal for the discovery rule's

applicability are based on the allegation that Defendants "knowingly and willingly

[took] steps to claim the Barker Mortgage was assigned to [IndyMac Bank]," and

that Plaintiffs were unaware of the ALA until the fall of 2016.  (Doc. 36 at ¶ 68.);

(Doc. 56 at 27).

As noted above, however, the ALA was recorded in the public record in June 2010.  Additionally, the Court has determined Plaintiffs were on inquiry notice of the assignment to IndyMac, and CIT did not take any affirmative act of concealment.  "Mere ignorance of the facts will not suffice to toll the statute of limitations."  *Cartwright v. Equitable Life Assur. Soc. of U.S.*, 914 P.2d 976, 985 (Mont. 1996).  Finally, Plaintiffs have not demonstrated that a fiduciary relationship existed between the parties.  Therefore, CIT was not obligated to inform Plaintiffs of the ALA.  Without showing the existence of such an obligation, or that "more than mere ignorance" prevented Plaintiffs from discovering the ALA prior to the fall of 2016, the Court cannot find the limitations period should be tolled.  *Pederson*, 272 P.3d at 666-67.

For the foregoing reasons, the Court finds Plaintiffs' claims are barred by the applicable statutes of limitations.  The Court recommends dismissal on that basis as well as for failure to state a claim.

## C.  Motion to Dissolve Injunction

Upon removal of an action from state to federal court, all existing state orders, including injunctions, remain in effect until dissolved or modified by the federal district court.  28 U.S.C. § 1450.  Since the Court has recommended CIT's motion to dismiss be granted, the Court also recommends CIT's motion to dissolve injunction be granted.

28

### D.     Leave to Amend

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend.  This is the Plaintiffs second attempt to file a complaint stating a claim upon which relief can be granted.  Although Plaintiffs supplemented their allegations, their Second Amended Complaint remains deficient.  "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotations omitted).  Further, when a plaintiff fails to cure deficiencies by amendment when given the opportunity, it is a "strong indication that the plaintiffs have no additional facts to plead" and "that any attempt to amend would be futile." *Id*.  In addition, the Court has found the claims are barred by the statutes of limitations.  The Court therefore recommends CIT's motion to dismiss should be granted with prejudice.

## III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that

(1)    CIT's Motion to Dismiss (Doc. 46) be **GRANTED**, with prejudice; and

(2)    CIT's Motion to Dissolve Injunction (Doc. 43) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 12th day of August, 2019.

_____

TIMOTHY J. CAVAN
United States Magistrate Judge